UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LORI M.,[1]

              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,[2]

              Defendant.

_____

**DECISION AND ORDER**

1:19-cv-00570 (JJM)

      This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final

determination of defendant Andrew M. Saul, the Commissioner of Social Security, that plaintiff

was not entitled to Supplemental Security Income ("SSI").  Before the court are the parties'

cross-motions for judgment on the pleadings [12, 19].[3] The parties have consented to my

jurisdiction [21].  Having reviewed the parties' submissions [12, 19, 20], the Commissioner's

motion is granted, and plaintiff's motion is denied.

---

[1]      In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]      Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019, and is
automatically substituted as the defendant in this action.  *See* Fed. R. Civ. P. ("Rule") 25(d).

[3]      Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page
references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

## BACKGROUND

The parties' familiarity with the 866-page administrative record [6] is presumed.

In July 2015, plaintiff filed an application for SSI,[4] alleging a disability onset date of May 27,

2009, due to lower lumbar disc bulges, spurs in the spine, arthritis, asthma, scoliosis, depression,

anxiety, sleep apnea, high cholesterol, migraines, drug abuse, and comprehension problems.

Administrative record [6], pp. 181, 185.  At the time of her application, plaintiff was 47 years

old, and had a work history that included cashier and prep cook in grocery and fast food settings,

and factory work.  Id., p. 186.  After the application was denied, an administrative hearing was

conducted before Administrative Law Judge ("ALJ") Gregory Moldafsky on December 5, 2017,

at which plaintiff, who appeared with an attorney, and vocational expert Kim Bates testified. Id.,

pp. 31-78.

The record contains four medical opinions concerning plaintiff's functional

limitations:

1. John Schwab, D.O. performed a consultative examination of plaintiff on

September 25, 2015.  [6], p. 258.  Plaintiff outlined her history of low and thoracic back

pain, carpal tunnel syndrome, asthma, sleep apnea, migraines, and emphysema.  Id.

Upon examination, plaintiff did not appear to be in acute distress and her gait was

normal.  Id., p. 259.  She was able to walk on heels and toes with no difficulty and needed

no help getting on and off the exam table, but stopped her squat at 70%.  Id.  Her stance

was normal, she did not use any assistive device, and was able to rise from a chair

without difficulty.  Id.  Dr. Schwab noted no abnormal findings except with respect to

plaintiff's lumbar spine, which showed flexion to 70 degrees and extension to 10 degrees,

---

[4]     I have used the date used by the parties, but the record appears to indicate that the application was
filed in August 2015. [6], p. 164.

with full bilateral flexion and rotary movement.  Id., p. 260.  She had a positive straight leg raise test at 30 degrees bilaterally, and at 30 degrees bilaterally when performed sitting.  Id.  Plaintiff's deep tendon reflexes were "physiologic and equal" and her strength was 5/5 in both upper and lower extremities, with no sensory deficit noted.  Id. Dr. Schwab noted no muscle atrophy in plaintiff's extremities, and her grip strength was 5/5 bilaterally.  Id., p. 261.  Dr. Schwab's diagnoses included low back pain, migraine headaches, and asthma.  Id.  Plaintiff's prognosis was "stable".  Id.  Functionally, he opined that plaintiff "has a mild restriction to bending, lifting, and carrying heavy objects".  Id.  He also stated plaintiff "should avoid excessive exercise".   Id.

       2.  Gregory Fabiano, Ph.D. performed a psychiatric consultative examination on September 25, 2015.  Id., p. 266.  After taking a lengthy history, including information concerning plaintiff's current functioning (id., pp. 266-67), Dr. Fabiano performed a mental status examination.  Id., p. 268.  In most areas of functioning, he described plaintiff's presentation as "normal", "adequate", "appropriate", and "intact".  Id.  He found plaintiff's "recent and remote memory skills" "mildly impaired perhaps due to some distractibility" and opined under the area of "cognitive functioning" that plaintiff's "[i]ntellectual functioning appeared average", but that her "[g]eneral fund of information appeared limited".  Id., p. 268.  Dr. Fabiano's diagnoses included major depressive disorder with recurrent episodes, and unspecified anxiety disorder.  Id., p. 269.  He opined that plaintiff had no evidence of limitations in all areas of functioning, other than "some mild limitations in her ability to appropriately deal with stress".  Id.  He recommended that plaintiff "continue with drug treatment" and "with her plan to initiate

psychological and psychiatric treatment". Id., p. 270.  He found her prognosis "[f]air,

given the initiation of appropriate interventions.  Id.

       3.  Plaintiff's treating registered physician's assistant, Ronald Miller, working

under David Stahl, M.D., completed a Medical Examination for Employability

Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form

on June 12, 2017.  Id., pp. 431-32.  He identified three primary medical conditions: left

shoulder pain, chronic low back pain, and migraine headaches.  Id., p. 431.  He opined

plaintiff's prognosis for the shoulder pain and migraines was "fair", but that her

prognosis for the low back pain was "poor".  Id.  Under the section for functional

limitations, RPAC Miller checked boxes indicating that plaintiff was "moderately

limited" in her ability to walk; stand; sit; lift and carry; push, pull, and bend; and climb.

Id., p. 432.  In areas of mental functioning, RPAC Miller identified no evidence of

limitations in most areas, but opined plaintiff was "moderately limited" in her ability "to

function in a work setting at a consistent pace".  Id.

       4.  Finally, state agency psychological consultant H. Tzetzo, Ph.D. stated on

October 13, 2015, after his review of Dr. Fabiano's report, that plaintiff's "psychiatric

impairments appear to be non-severe".  Id., p. 428.

       Based upon the medical evidence and testimony, ALJ Moldafsky found that

plaintiff's severe impairments were "lower lumbar disc bulges, spurs in the spine, arthritis,

asthma, scoliosis, obesity, sleep apnea, high cholesterol, migraines, depression, and anxiety".

Id., p. 18.  He concluded that plaintiff had the residual functional capacity ("RFC") to perform a

full range of light work, with several modifications:

> "[T]he claimant has the [RFC] to perform light work as defined in
> 20 CFR 416.967(b) except she can occasionally climb ramps and

stairs.  She can never climb ladders, ropes, or scaffolds.  She can
occasionally stoop, crouch, and crawl.  She can have occasional
exposure to fumes, odors or other pulmonary irritants.  She can
have occasional exposure to extreme cold.  She is limited to simple
(as defined in the DOT as SVP levels 1 and 2), routine, repetitive
tasks, in a work environment that is not fast paced or has strict
production quotas (e.g. work that is goal based or measured by end
result).  She is limited to jobs where changes in work setting or
processes are no more than occasional."

Id., pp. 19-21.  In reaching that RFC, ALJ Moldafsky discussed at length the opinions of Drs.

Schwab and Fabiano, but did not explicitly assign them a specific weight.  See id., pp. 21, 23.

ALJ Moldafsky assigned the opinion of RPAC Miller "some" weight because it was "supported

by the evidence of record, revealing significantly normal exam findings" and "noted that the

claimant had up to moderate problems with postural activities and mental functioning".  Id., p.

24. Lastly, ALJ Moldafsky assigned the opinion of Dr. Tzetzo "little weight" because "he did

not have an opportunity to review the records received at the hearing level and assess[ ] the

severity of mental impairments".  Id., p. 24.  ALJ Moldafsky also considered and discussed the

remaining medical and other evidence in the file, including: the plaintiff's testimony (id., p. 20);

reports of laboratory tests including MRIs and x-rays (id., p. 21); and medical records and

treatment notes from Buffalo Spine and Sports Medicine (id.), University of Rochester Medical

Center concerning a neurosurgical consultation (id.), RPAC Miller and Dr. Stahl (id., p. 22),

Central New York Psychiatric Center (id.), Genesee/Orleans Council on Alcohol and Substance

Abuse (id.), and Orleans County Mental Health Clinic (id.).

    As part of his analysis, ALJ Moldafsky found that plaintiff's "statements about

the intensity, persistence and limiting effects of her symptoms are inconsistent with the evidence

of record", explaining that:

> "the claimant appears to manage her pain symptoms with pain
> medications and without the need for further intervention, as
> discussed above.  While the claimant alleges that she needs a
> walker to ambulate, the objective record in November 2017 does
> not support the medical necessity, and the prescribed walker was at
> the direct request by the claimant . . . .  Additionally, the record
> indicates that the claimant did not use an assistive device or had
> any significant problems with gait, balancing, and or walking
> noted at the medical appointments . . . .  Therefore, the
> undersigned does not find a basis to find an assistive device in the
> claimant's [RFC].  For the most part, the claimant's physical
> impairments are controlled and stable with compliance to
> medication, and objective examinations showed mostly full range
> of motions and strength as 5/5, despite other positive findings like
> tenderness and a one-time positive Hoffman's sign . . . . As for the
> claimant's mental health condition, the record shows significantly
> normal mental status exam findings during the period at issue,
> consistent with the lack of hospitalizations or emergency visits.
> Finally, the claimant reportedly indicated to her medical providers
> that she is able to take care of herself independently and use
> transportation . . . ."

Id., pp. 23-24.

Based upon the RFC and the vocational expert's testimony, ALJ Moldafsky

determined that plaintiff was able to perform jobs that exist in significant numbers in the national

economy, and therefore was not disabled from July 1, 2015.  Id., p. 28.  The Appeals Council

found no basis to change ALJ Moldafsky's decision. Id., pp. 1-5. Thereafter, this action ensued.


## DISCUSSION

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant

is not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42

U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as

adequate to support a conclusion". <u>Consolidated Edison Co. of New York. Inc. v. NLRB</u>, 305 U.S. 197, 229 (1938).

   An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. <u>Shaw</u>, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d. Cir. 2012).

   Plaintiff argues that ALJ Moldafsky "did not rely on substantial evidence" to determine her RFC and "instead relied upon his own lay interpretation of bare medical findings regarding complex physical and mental impairments", "failed to weigh all of the opinion evidence", and arrived at an RFC based upon "mischaracterizations" of the record and "misstatement of fact".  Plaintiff's Memorandum of Law [12-1], pp. 17-20.  In addition, plaintiff argues that the ALJ improperly assessed her testimony about the limiting effects of her symptoms.  <u>Id.</u>, pp. 28-29.  I disagree for the reasons discussed below.

**B.**   **Did ALJ Moldafsky, as a Layperson, Improperly Formulate the RFC?**

   An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole".  <u>Matta v. Astrue</u>, 508 Fed. App'x 53, 56 (2d Cir. 2013) (Summary Order).  Although an ALJ "may not substitute his own lay opinion for those of medical experts", he or she "is free to choose between properly submitted medical opinions". <u>Mowry v. Commissioner of Social Security</u>, 2019 WL 4643595, *3 (W.D.N.Y. 2019).  The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". <u>Matta v. Astrue</u>, 508 Fed. App'x 53, 56 (2d Cir. 2013) (Summary Order).  *See also* <u>Young v. Berryhill</u>, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC

determination").  "The question is, instead, whether the ALJ's conclusion was 'supported by the

record as a whole.'"  Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4

(S.D.N.Y. 2019) (*quoting* Tricarico v. Colvin, 681 Fed. App'x 98, 101 (2d Cir. 2017) (Summary

Order)).  *See* Butler v. Commissioner of Social Security, 2017 WL 2834482, *8 (N.D.N.Y. 2017)

("[i]t is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is

entitled to weigh all the evidence and adopt the limitations supported by the evidence").

   "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC

assessed by the ALJ".  Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020).

Plaintiff fails to articulate what, if any, additional limitations appear in Dr. Schwab's or Dr.

Fabiano's reports that the ALJ failed to include in the RFC.  Nor does plaintiff identify any other

evidence in the record that satisfies her burden to prove more restrictive limitations than those

already included in the RFC.  Moreover, I do not agree that because ALJ Moldafsky did not

assign a specific weight to the opinions of Drs. Schwab and Fabiano, he "failed to adequately tie

these limitations to anywhere in the record that supports" the RFC ([12-1], p. 24), or that the

limitations in the RFC "are not consistent with any opinion evidence of record" (id.).  Even if the

ALJ erred by not assigning a specific weight to those opinions, I find that error was harmless

based upon this record.

   The record included four medical opinions assessing plaintiff's functional

limitations.  ALJ Moldafsky "was entitled to choose between properly submitted medical

opinions and to consider other evidence of record in determining plaintiff's RFC."  Eichelberger

v. Saul, 2019 WL 4072752, *3 (W.D.N.Y. 2019).  Plaintiff does not dispute how ALJ Moldafsky

weighed the opinions of RPAC Miller and Dr. Tzetzo.  Plaintiff's Memorandum of Law [12-1],

pp. 17-24.  Instead, although plaintiff acknowledges that ALJ Moldafsky assigned RPAC

Miller's opinion "some" weight (id., pp. 22-23), plaintiff ignores this assessment throughout her argument, instead insisting that there is "no way for this Court to engage in any meaningful review of the RFC, as there is no way to determine why the ALJ arrived at this RFC and what he based it on, besides his own lay interpretation of bare medical findings". Id., p. 22.

However, as pointed out by the Commissioner, the RFC is supported by RPAC Miller's functional assessment, to which ALJ Moldafsky assigned "some" weight, and incorporates restrictions that encompass the limitations identified by Drs. Schwab and Fabiano. Commissioner's Memorandum in Support [19-1], pp. 8-9. Plaintiff does not argue that RPAC Miller's functional assessment – or any other medical evidence in the record – supports a more restrictive RFC. See id., p. 12. RPAC Miller opined that plaintiff was "moderately limited" in the following areas of physical functioning: walking; standing; sitting; lifting, carrying; pushing, pulling, bending; and stairs or other climbing. [6], p. 432. He also opined that she was "moderately limited" in her ability to function in a work setting at a consistent pace. Id. Giving "some" weight to this assessment, ALJ Moldafsky found that plaintiff had the RFC "to perform light work" with additional restrictions.

Courts in this circuit have frequently held that a restriction to light work accounts for moderate functional limitations. See White v. Berryhill, 725 Fed. App'x. 80, *81-82 (2d Cir. 2019) (Summary Order) (finding that substantial evidence supported and RFC "to perform a modified version of light work" where the record contained a doctor's opinion stating plaintiff had "'moderate limitations' in standing, sitting, and performing other activities"); Glab v. Commissioner, 2018 WL 3422062, *3-4 (W.D.N.Y. 2018) (ALJ's conclusion that plaintiff "was capable of performing light work was fully consistent" with doctor's opinion that plaintiff had "mild limitations in repetitive pushing, pulling, lifting, and carrying"); Amons v. Astrue, 617

F.Supp.2d 173, 176 (W.D.N.Y. 2009) (finding that substantial evidence supported ALJ's determination that plaintiff retained the RFC to perform a full range of light work with some additional limitations where examining physician reports reflected "moderate limitations in walking, standing, squatting, climbing and reaching").  Accordingly, RPAC Miller's opinion that plaintiff has moderate limitations in her ability to walk, stand, sit, lift, carry, push, pull, and climb generally supports ALJ Moldafsky's finding that plaintiff retains the RFC to perform light work.  *See* [6], p. 432.

Moreover, ALJ Moldafsky further limited some specific postural and functional activities identified in RPAC Miller's assessment.  ALJ Moldafsky found that plaintiff could "occasionally climb ramps and stairs", "never climb ladders, ropes, or scaffolds", and "occasionally stoop, crouch and crawl".  Id., p. 19.  These limitations correspond to RPAC Miller's report that plaintiff is moderately limited in her ability to climb stairs, to perform "other climbing", and bending.  Id., p. 432.  Given that the moderate limitations opined by RPAC Miller are more significant than the mild limitations found by Dr. Schwab in plaintiff's ability to bend, lift, and carry heavy objects, the RFC also accounts for the limitations in Dr. Schwab's report.

With respect to plaintiff's mental limitations, RPAC Miller found plaintiff to be "moderately limited" in her ability "to function in a work setting at a consistent pace".  Id, p. 432.  ALJ Moldafsky incorporated this opinion into the RFC, which limited plaintiff to "a work environment that is not fast paced or has strict production quotas".  Id., p. 20.

In addition, the RFC accounts Dr. Fabiano's opinion that plaintiff has mild limitations in her "ability to appropriately deal with stress" but no "evidence of limitations in her ability to follow and understand simple directions and instructions" or to "perform simple tasks independently".  Id., p. 269.  ALJ Moldafsky incorporated into the RFC a limitation "to simple

(as defined in the DOT as SVP levels 1 and 2), routine, repetitive tasks" and to "jobs where changes in work setting or processes are no more than occasional". Id., p. 20.  Limitations to simple, unskilled work at a non-production pace adequately account for up to moderate limitations in an ability to deal with stress.  *See* Greentaner v. Commissioner, 2020 WL 5814654, *5 (W.D.N.Y. 2020) (limitation to "simple instructions and tasks without supervisory duties, independent[] decision making, or strict production requirement" involving "only minimal changes in work routine and processes" and "frequent interaction with supervisors, co-workers, and the general public" adequately "accounted for Plaintiff's mild limitations in his ability to handle stress"); Cowley v. Berryhill, 312 F.Supp.3d 381, 384 (W.D.N.Y. 2018) (finding that an RFC limiting plaintiff to "simple, unskilled tasks with no more than occasional changes in the work setting and without an hourly, machine-driven assembly line production rate" accounted for moderate limitation with respect to stress); Moxham v. Commissioner, 2018 WL 1175210, *9 (N.D.N.Y. 2018) (plaintiff "fails to illustrate" how RFC limitation to "simple tasks, simple instructions, frequent interaction with supervisors, coworkers, and the public, and decisions on simple work-related matters" "do not adequately account" for moderate-to-marked limitations in dealing with stress); McIntyre v. Colvin, 758 F.3d 146, 151-52 (2d Cir. 2014) (limitation to "simple, routine, low stress tasks" accounted for moderate limitations in maintaining "concentration, persistence, and pace").  Accordingly, notwithstanding the ALJ's failure to assign a specific weight to Dr. Fabiano's opinion, the ALJ nonetheless incorporated into the RFC Dr. Fabiano's finding that plaintiff had "some mild limitations in her ability appropriately deal with stress".  [6], p. 269.

Moreover, even assuming that it was error for the ALJ to omit from his decision an assignment of specific weight to the opinions of Drs. Schwab and Fabiano, I find that error

harmless here, where it appears the ALJ incorporated into his RFC all of the limitations

suggested by the opinions in the record, and the plaintiff has failed to identify any medical

evidence suggesting a more restrictive RFC is appropriate.  Where remand, despite an error,

could lead only to the same conclusion, remand is not required.  *See* Zabala v. Astrue, 595 F.3d

402, 409 (2d Cir. 2010) ("[r]emand is unnecessary, however, where application of the correct

legal standard could lead to only one conclusion") (internal quotation and citation omitted).

**C.      Did ALJ Moldafsky Properly Assess Plaintiff's Testimony?**

I turn next to plaintiff's argument that, in assessing her testimony concerning the

limiting effects of her symptoms, ALJ Moldafsky "improperly diminished" the weight he

assigned to her subjective complaints and symptoms, and otherwise erred in his assessment

because he "over-emphasized" her daily activities and improperly "mischaracterized the

evidence and relied upon the absence of evidence in doing so".  Plaintiff's Memorandum of Law

[12-1], p. 24.  In response, the Commissioner argues that ALJ Moldafsky properly supported his

assessment of plaintiff's subjective symptoms by considering the relevant factors identified in 20

C.F.R. § 416.929(c)(3).   I agree with the Commissioner.

"In evaluating a claimant's credibility, the ALJ must follow a two-step process.

First, the ALJ must decide whether the claimant suffers from a medically determinable

impairment that could reasonably be expected to produce the symptoms alleged.  Second, the

ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as

consistent with the objective medical evidence and other evidence of record." Wetzel v.

Berryhill, 783 Fed. App'x. 44, 47 (2d Cir. 2019) (Summary Order).  "In addition to using all of

the evidence to evaluate the intensity, persistence, and limiting effects of an individual's

symptoms", the Commissioner uses "the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3)"[5], including:

"1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms."

Social Security Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, *7-8 (S.S.A. Oct. 25, 2017).

An ALJ is "not required to discuss every credibility factor individually", so long as "the decision is sufficient to allow this Court to determine the basis for the . . . credibility determination". Brylski v. Astrue, 2012 WL 1038622, *3 (W.D.N.Y. 2012). Where supported by substantial evidence, an ALJ's evaluation of a claimant's credibility is entitled to "great deference". Colon v. Commissioner of Social Security, 2019 WL 4197785, *6 (W.D.N.Y. 2019).

---

[5]      SSR 16-3p was revised and republished on October 25, 2017 to, *inter alia*, "reflect the revised regulations that became effective on March 27, 2017" and apply to "determinations and decisions" made "on or after March 28, 2016". SSR 16-3p, 2017 WL 5180304, *1, *5 n. 8. Here, plaintiff's hearing before ALJ Moldafsky was held on December 5, 2017 ([6], p. 31) and ALJ Moldafsky issued his decision on May 10, 2018 (id, p. 12).

I do not agree that ALJ Moldafsky "over-emphasized" plaintiff's daily activities ([12-1], p. 24), or that he relied upon her activities of daily living as evidence that plaintiff could perform activities "commensurate with competitive work"(id., p. 26).  ALJ Moldafsky made no such finding.  Instead, he stated that claimant's statements concerning the "limiting effects" of her symptoms were "not entirely consistent" with the medical and other evidence, which he proceeded to outline in his decision.  [6], pp. 21-24.  ALJ Moldafsky then considered nearly all of the factors outlined in 20 C.F.R. § 416.929(c)(3), including the activities of daily living that plaintiff reported to her medical providers and examiners, and the observations her providers made upon examination.  Id.  Activities of daily living are simply "another consideration that an ALJ may properly weigh in making his or her credibility evaluation".  Colon, 2019 WL 4197785, *7.

Plaintiff next argues that ALJ Moldafsky's rejection of plaintiff's testimony concerning the limiting effects of her symptoms is faulty because he "selectively read" "conflicting evidence" and based his determination upon "factual errors in evaluating" the medical evidence.  Plaintiff's Memorandum of Law [12-1], p. 27.  The sole example plaintiff gives of the ALJ's supposed error is his use of the words "managed", "controlled", "stable" and "normal" to describe some of the evidence "while discounting findings that showed the ongoing severity of her impairments and the resulting difficulties she had, both physically and mentally".  Id., p. 28.  Aside from plaintiff's own testimony, however, she identifies no "findings" or "evidence" in the record that conflict with the ALJ's RFC determination or that assess functional limitations more consistent with plaintiff's testimony concerning her limitations.

Further, I disagree that ALJ Moldafsky "mischaracterized . . . and selectively read the evidence in order to support his conclusion that Plaintiff's impairments were not as severe as

-14-

alleged".  Plaintiff's Memorandum of Law [12-1], p. 28.  Again, plaintiff points to no examples in the medical evidence that support her allegation.  Plaintiff may not use arguments concerning an ALJ's assessment of her reported symptoms to obtain a more favorable standard of review of the sufficiency of the ALJ's RFC determination. Pellam v. Astrue, 508 Fed. App'x. 87, 91 (2d Cir. 2013) (Summary Order).

Plaintiff next complains that "the ALJ relied upon an absence of hospitalizations or emergency visits for Plaintiff's mental health impairments in finding that Plaintiff's mental health was normal during the relevant period".  Plaintiff's Memorandum of Law [12-1], p. 28. Plaintiff, however, mischaracterizes ALJ Moldafsky's determination.  In his decision, he stated with respect to his analysis of plaintiff's claims of disabling mental health symptoms, that "the record shows significantly normal mental status exam findings during the period at issue, consistent with the lack of hospitalizations or emergency visits".  [6], p. 24.  ALJ Moldafsky did not make a finding that plaintiff's mental health was "normal".  In fact, he found that plaintiff's severe impairments included both depression and anxiety ([6], p. 18) and included non-exertional limitations in the RFC to account for the effects of those impairments (id., pp. 20, 22-24). Plaintiff fails to identify any mental exam finding inconsistent with ALJ Moldafsky's statement and, in any event, "[a] conservative pattern of treatment is an appropriate factor to consider in assessing credibility".  Glab v. Commissioner, 2018 WL 3422062, *6 (W.D.N.Y. 2018).

Plaintiff's final two arguments are similarly without merit.  ALJ Moldafsky stated that, "for the most part, the claimant's physical impairments are controlled and stable with compliance to medication".  [6], p. 23.  While I agree with plaintiff that, in some cases, "stabilization does not necessarily equate to improvement" ([12-1], p. 28), this is not a case, as plaintiff suggests, where the ALJ plucked the word "stable" from medical records while ignoring

other findings and comments of a plaintiff's medical providers suggesting more significant functional impairments. *See e.g.* Kohler v. Astrue, 546 F.3d 260, 268 (2d Cir. 2008) (ALJ ignored records rating claimant's limitations in social functioning as "moderate", and notes concerning plaintiff's manic episodes requiring hospitalization and plaintiff's inability to maintain a full-time job). Plaintiff does not identify any specific findings that ALJ Moldafsky overlooked. Instead, ALJ Moldafsky supported his interpretation of plaintiff's condition as "stable" by pointing to physical examinations showing mostly full range of motion and 5/5 strength in her extremities, while acknowledging the positive findings noted in the record. [6], pp. 21-24.

Finally, plaintiff complains that ALJ Moldafsky "failed to adequately consider the fact that Plaintiff was taking potent medications during the relevant period". Plaintiff's Memorandum of Law [12-1], p. 29. However, ALJ Moldafsky's opinion demonstrates that he both acknowledged and considered plaintiff's medications when he considered the plaintiff's testimony concerning her symptoms. *See* [6], pp. 20 (outlining plaintiff's testimony concerning her medications and side effects); 21 (discussing Dr. Schwab's September 2015 report, which included plaintiff's then-current medications (id., p. 259)); 22 (acknowledging plaintiff's referral to "neuromedicine pain management" and discussing RPAC Miller's November 2017 treatment record, which included a list of plaintiff's then-current medications (id., pp. 489-90)); 23 (discussing plaintiff's use of medications). I agree with the Commissioner that, on this record, ALJ Moldafsky demonstrated that he considered the effect of plaintiff's medications in his analysis of plaintiff's testimony concerning her symptoms, and elsewhere in his decision. Because ALJ Moldafsky's rationale for his credibility determination was readily discernible and supported by substantial evidence, I find no basis to warrant remand.

-16-

**CONCLUSION**

For these reasons, the Commissioner's motion for judgment on the pleadings [19] is granted, and plaintiff's motion [12] is denied.

 **SO ORDERED**.

Dated: December 16, 2020

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge